CONTINENTAL BUILDING & LOAN ASSOCIATION OF KANSAS CITY, No. 2, v. ANDERSON AULGUR.

FILED MARCH 3, 1898. No. 7861.

1. **Review: EVIDENCE.** The evidence examined, and *held* to sustain the finding of the jury.

2. **Principal and Agent: EVIDENCE.** The ruling of the district court in admitting in evidence a receipt for money, given to the defendant in error by a witness and director of plaintiff in error, which tended to contradict the evidence of the witness that in his dealings with defendant in error he was acting on his own behalf and not as plaintiff's agent, reviewed and *held* not erroneous.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J. *Affirmed.*

*Cobb & Harvey* and *Morning & Berge*, for plaintiff in error.

*Charles E. Magoon, contra.*

RAGAN, C.

The Continental Building and Loan Association of Kansas City, No. 2, has filed here a petition in error to review a judgment pronounced against it in favor of

Anderson Aulgur by. the district court of Lancaster county.

1. The first argument is that the verdict is not sustained by sufficient evidence. Aulgur set out in his petition nine causes of action. It is unnecessary to pay any attention to the ninth cause of action, as the defendant below offered to confess judgment thereon. The other eight causes of action were alike, and, without quoting the petition, they were substantially this: Aulgur was the owner of eight houses and lots in Abbott & Irvine's Addition to the city of Lincoln, had sold these eight properties to eight different persons, and as a part consideration of the purchase price was to accept a note from each vendee of $650, secured by mortgage upon the real estate sold. Aulgur then contracted with the building association, by which it agreed to take the mortgages of Aulgur's vendees. Each vendee executed his note to the building association for $650 and secured the payment of the note by a mortgage upon the property sold to such vendee by Aulgur, and thereupon the building association paid to said Aulgur $575 on each of said mortgages. This suit was brought by Aulgur to recover the $75 which he claims remain unpaid to him from the building association on each of said mortgage debts, or a total amount of $600. The building association answered, first, that it had paid on each of said mortgage loans the $575 and agreed to pay him the remaining $75 on each of said loans when each mortgagor had paid on his loan a sufficient amount of money to reduce it from $650 to $575, and that none of said mortgagors had paid said amount on his loan. The second defense of the building association was that Aulgur's vendees were carpenters and were at work for him, and that he agreed with the building association that instead of paying his vendees for their work he would retain out of their wages sufficient sums of money to pay what would become due on their mortgages and pay these sums to the building association until each mortgagor had reduced his debt to the building asso-

ciation $75, and then it, the building association, would pay said $75 on each of said loans to Aulgur; and that Aulgur neglected to withhold the wages of his men and pay them to it, the building association, and that the mortgagors themselves had not reduced their mortgage debts to $575 each.   It will thus be seen that the building association's answer amounted to a confession and avoidance of the cause of action set up by Aulgur in his petition, and the building association assumed the burden of establishing the two defenses pleaded by it.   We cannot say that the jury was wrong in reaching the conclusion that the building association had not established either of these defenses.   The second defense interposed, to say the least, is very peculiar, and it may be doubted if it amounts to a defense.   The nature of the building association's answer disposes of its contention here that there is a variance between the pleadings and proof of Aulgur.

2. The second assignment of error relates to the action of the district court in permitting a receipt to be introduced in evidence on the trial.   It appears that whatever agreement was entered into between Aulgur and the building association was made on behalf of the latter by one of its directors, named Ripley, and he testified in the case on the trial on behalf of the building association to the effect that while the building association took mortgages from each of Aulgur's vendees for $650 the company was only to pay down $575 to Aulgur for each of said mortgages, and to pay the remaining $75 on each of said mortgages only when the mortgage debts had been reduced by payments made thereon $75 each; that he was positive that this was the agreement between him and Aulgur, because, as an agent of the building association, he had no authority to pay in cash more for the mortgages purchased.   On cross-examination he admitted that he was a director of the association at that time, and was at the time of the agreement between the company and Aulgur.   His examination then proceeded as follows:

Q. In what capacity are you employed by them?

A. The question is, what do you mean by capacity?

Q. Don't you know what is meant by capacity?

A. No, sir, I do not; but I can tell you that I am one of the directors of the company.

Q. Yes, sir; what else?

A. What else what?

Q. What else are you in this company?

A. I am not anything, only a man.. *   *   *

Q. You say you were out here examining property. Were you examining property as a director?

A. No, sir; I was examining the property as a man.

Q. Well, as a director of this company?

A. No, sir.

Q. You didn't have any relation with this company at that time?

A. Well, I won't answer that question.

Q. Well, did you examine this property?

A. I examined that property.

Q. What for?

A. I will answer that question when I am instructed to by the court; I don't propose——

The Court: You may answer, Mr. Witness.

The Witness: What is the question?

(Question read.)

A. I examined it to find out its value.

Q. For what purpose did you desire to ascertain its value?

A. To report to the board its value.

Q. To what board?

A. To the board of directors of the Continental Building & Loan Association of Kansas City.

Q. And how many are there in that board?

A. I don't know.

Q. Is there not a committee of that board that passes upon these loans when they are submitted to them? *   *

A. Yes, sir; there was at that time.

Q. And of whom did that consist?

A. That consisted of three persons, the president, the secretary, and myself.

Q. When you were dealing with Mr. Aulgur did you deal with him as a director of that company?

A. I did not.

Q. In what capacity did you deal with him?

A. I dealt with him as an individual sent here by the company to examine property and report to the company its value.

Q. You did not deal with him as a director?

A. No, sir.

Q. Do you remember that fact as distinctly as anything else you have testified to?

A. What fact?

Q. That you did not deal with him as a director.

A. I couldn't deal with him as a director. An individual cannot deal with a man as a director. It is an utter impossibility.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

Q. Did you ever see that receipt before?

A. Yes, sir.

Q. Is that your handwriting?

A. Yes, sir.

The plaintiff then offered, and the court permitted to be read to the jury, the following:

"Rec'd, Lincoln, April 13, 1892, fifty-two dollars, examiner's exp., and fifteen dollars, lawyer fee, on loan for eight houses in Abbott's & Irvine Add.

E. L. RIPLEY,
"*Director, Continental B. & Loan Ass'n.*"

The court did not err in admitting in evidence this receipt. The loan association by its answer admitted the purchase of the Aulgur mortgages at their face value of $650 each; that it had only paid on each of said mortgages $575 and that it still owed Aulgur $75 on each of said mortgages, which sums had not become due under the contract which it made with Aulgur. To prove this

defense the building association put their director and agent, Ripley, on the stand, and he testified, at the behest of the building association, that he was its director and was its agent to contract with Aulgur; that is, the building association, by its pleading and its conduct in putting Ripley upon the stand as its witness, admitted that he had authority to purchase the mortgages at their face value; to pay $575 down on each mortgage and become Aulgur's debtor for the remaining $75 on each mortgage. While the building association concedes that its agent had this much authority, it denies that the agent had authority to pay in cash for the mortgages their face value; and the witness assigns, as a reason why he could not be mistaken as to what the contract between him and Aulgur was, that in all his dealings with Aulgur he was acting as an individual and not as an agent of the company. But the company, by its pleading and conduct in the case, has estopped itself from saying that Ripley was not its agent and authorized to purchase these mortgages from Aulgur; and whether the mortgages were to be paid cash for at the time they were purchased, or to be paid for part in cash and credit given for a part, was a question of fact for the jury; and whether Ripley was authorized to purchase the mortgages for cash was likewise a question for the jury, and this receipt introduced in evidence went to the credibility of this witness' testimony, that in all his dealings with Aulgur he was acting upon his own responsibility and not for the company; and he testified in explanation of the receipt that it was given by him to Aulgur for money which Aulgur paid him for his company, and that the payment grew out of this transaction of the sale of the mortgages in controversy here. In other words, it appears that Aulgur paid to Ripley for the building association, as compensation for examining the mortgaged property, $67. The receipt then was at least an admission of the witness that in his dealings with Aulgur he was acting as the agent of the building association, and in that respect tended to contradict his

testimony that he was not so acting. The judgment of the district court is right and is

AFFIRMED.